## Case No. 16,346.

### UNITED STATES v. SMITH et al.

[1 Woodb. & M. 184.] [1]

Circuit Court, D. Maine. May Term, 1846.

MARSHAL'S ACCOUNTS — CERTIFICATE OF JUDGE — AUTHORITY OF ACCOUNTING OFFICERS — MARSHAL'S FEES AND COMMISSIONS — INTEREST.

1. A certificate of a judge, allowing an account of a marshal is primâ facie evidence of its legality and proper amount.

2. But when the treasury department entertain doubts on those points—it can require farther evidence and reasons in favor of the account, or reject it, if believed improper, till sustained by the opinion of some judicial tribunal.

3. If the items to which a judge certifies have been settled judicially in an action or bill of cost—heard and decided between proper parties—the items ought usually to be passed at the treasury department, if appropriations exist which embrace them.

4. A charge by a marshal for distributing venires to town clerks at two dollars each is legal—but not for travel as if serving venires himself—when they are in fact served by a constable.

[Cited in Re Sheazle, Case No. 12,734; U. S. v. Richardson. 28 Fed. 73; Harmon v. U. S., 43 Fed. 565.]

5. Nor is a marshal the keeper or inspector of the state jails, or to be allowed for services in either of those capacities. unless in a case where he is specially directed by the court to examine some of them to see if they are suitable for the keeping and security of prisoners of the United States.

6. Where a marshal extends an execution on real estate for the government, he is entitled to his fees from the latter. though the land be not yet sold or redeemed or in any way converted into money.

7. A marshal is not entitled to commissions on money paid to his deputies for taking the census, it being a part of his official duty, and not a separate and independent service performed for the United States.

8. He is entitled to interest on sums due to him and not paid after demand, but on the same principle must pay interest on what is due from himself after demand.

[Error to the district court of the United States for the district of Maine.]

This was a writ of error, sued out September 10, 1844, on a judgment rendered the 3d

of that month, in the district court on the following case. [Case unreported.] An action of debt was brought in that court by the United States, against the defendants [Albert Smith and others] on an official bond, and the case was as the counsel agreed in the statement annexed:

Agreed statement: The writ is dated June 5, 1841. The pleadings were (1) The general issue of non est factum. (2) Omnia performavit, by way of brief statement. The plaintiff claims to recover $1,312.20, the balance alleged to have been collected by the said Albert Smith, as late marshal of said district. for the plaintiffs, on their execution against Ezekiel Foster, and which it is alleged he has never paid over to the plaintiffs. They also claim interest on that sum. See specification of claim filed. Upon the trial of the case at this term, it is agreed that the facts appear as follows: (1) The said Albert Smith (with the other defendants as his sureties), duly executed the bond declared on, dated May 1, 1834, it being an official bond, in the common form, for the faithful performance of his duties as late marshal of Maine. (2) That said Smith, in his said capacity, collected the money, mentioned in the plaintiff's specification of claim, one execution in favor of the plaintiffs and against Ezekiel Foster. and that he has retained that amount, and declined paying it over, upon the ground that he had legal and equitable claims against the plaintiffs for more than that amount, which he claimed to have allowed him in set-off to the plaintiffs' demand. In defence, the facts proved were as follows: (1) That the claims of the said Smith, as specified in his account filed in set-off No. 1, were all duly substantiated by competent testimony, and that they were presented to, and rejected by, the proper officers of the treasury department. The items for services of venires from the district and circuit courts, as specified in vouchers A and B, and those items for levy of an execution in behalf of the plaintiffs as specified in voucher C, had been presented to, and allowed and certified by, the courts aforesaid. (2) That the items of claim in the supplemental account of the said Smith, filed in set-off No. 2, were reasonable, provided they were by law admissible.

Upon request of the defendants' counsel, the district judge ruled pro forma, and instructed the jury, that if proved to their satisfaction, the defendants were entitled by law to the allowance in set-off in the plaintiff's claim, of the following claims: (1) Of the said Smith's claim for the services of venires from the district and circuit courts. (2) The claim for levying an execution on property of Joseph F. Wingate as charged. (3) The claim for commissions as charged on $9,287.53, paid out in taking the census of 1830; and the judge further ruled that interest ought to be allowed on each of these sums. (4) The claim for superintending and

[1] [Reported by Charles L. Woodbury, Esq., and George Minot, Esq.]

visiting the several persons in said district from April, 1829, to April, 1838, as specified in the supplemental account, No. 2. And the judge further instructed the jury, that the item of $26.50, as specified in the plaintiff's account in set-off No. 1, for serving a subpœna returnable to the circuit court of the Southern district of New York, was not admissible, and could not be allowed. Whereupon the jury returned a verdict for the defendants.

Howard & Shepley, for defendant.
Gorham Parks, U. S. Atty.

Judgment was rendered upon that verdict, and a writ of error was brought on it, which was argued at this term by Mr. Haynes, U. S. Dist. Atty., ana by Mr. Howard, for defendant.

WOODBURY, Circuit Justice. Letters have been read in this case from my distinguished predecessor, stating as his opinion, and that of the other justices of the supreme court, that the certificates of the district or circuit judges in favor of a marshal's account is conclusive on the treasury department, and is not open to re-examination or disallowance. His letter is dated November 5, 1837, and is in reply to one from Mr. Sibley, marshal of Massachusetts. The provision of law on this subject is in the 4th section of the act of congress, passed May 8, 1792 (chapter 36), and is in these words. After reciting several fees and items, which shall be included in the "account of the marshal," it proceeds to say: "And the same having been examined and certified by the court or one of the judges of it, in which the service shall have been rendered, shall be passed in the usual manner at, and the amount paid out of, the treasury of the United States to the marshal, and by him shall be paid over to the persons entitled to the same," &c. 1 Stat. 277. It is manifest, that if the true construction of this clause is, as contended by the defendants. the re-examination and rejection of any of the items by the treasury department, which has been certified by a judge, was unwarranted, and that it is also my duty to decide in favor of them all, without re-examination. For if such a certificate is conclusive upon the treasury, no question can be agitated here on its propriety, any more than by the accounting officers, and it should be sent back there for the account to be registered up without inquiry. But notwithstanding the high respect which is due to the opinion of Judge Story, and to his statement of the opinions of his brethren, it is to be recollected, that his views on this matter were not given, nor theirs, in a judicial case, but ex parte, or extra judicially. Nor are the reasons in their favor stated. It is to be remembered, also, that the usages of the treasury department have been different for half a century, as well as those of the circuit and supreme courts. Judge

Story himself, as well as other judges, when these questions as to disallowances by the accounting officers have come before the courts in actions at law, have uniformly considered them as open to examination, and have never felt bound conclusively by the certificate of a judge on them in favor of the marshal's account. See U. S. v. Cogswell [Case No. 14,825], and the other reports on like cases elsewhere. Nor does the language or reason of the act seem to require a different construction. It does not say the certificate of a judge shall be final or conclusive; but that, after it, the account shall be passed "in the usual manner," which manner is, to have the vouchers accompany it, and be examined so far as is deemed necessary to satisfy the accounting officer of the legality and propriety of the various items. The marshal himself being a responsible officer under oath, and the judge, and likewise the district attorney, whose opinion is usually taken (and often his certificate to allowances is asked by the judge, when they are new or unusual), it is certainly to be presumed, that the claims are legal. And a prima facie case in their favor is thus made out, which is all, probably, that Judge Story, or the other judges, under such circumstances, could have intended to mean. These may, properly, be enough to ensure the passage and payment of the account, unless something novel or extraordinary appears in respect to parts of it which may seem to require fuller explanation. In such last case, it has always been the practice of the treasury department to ask for such explanation, and if not receiving it, and the item appears not to be warranted by law or sound reason and analogy, they do and they ought to suspend or reject it.

The department has a duty to. perform under oath of office. I have ever considered that oath required them to conduct in that way, if serious doubts remained as to the legality or proper amount of the claim, and not to yield those doubts till a court, having jurisdiction of the subject, or the attorney-general of the United States, on a suitable application to him, gave an official opinion in favor of the claim, or congress by a special law authorized its payment. My own opinion corresponds with this practice; under a different station at the head of the treasury department, it had my sanction and concurrence for several years. The decision of a court where proper parties, as now, are before it, and contest an item of charge, is a different matter. It is then a judgment, which, in the views of most persons, is entitled to the respect and. assent of the departments so far as to pay the item thus allowed, if any suitable appropriation exist therefor. But a certificate of a judge. ex parte, in the hurry at the conclusion of a term, to an item, that has never been litigated nor argued by any opposing counsel, surely can make claim to no such binding and decisive weight. If the item, however,

is one on which judgment has been formally passed in an action only as a portion of a bill of cost, and it has become a part of that judgment, it would be a new and different question to be settled when it arises, whether the accounting officers could go back or behind such a judgment, if the United States was one of the parties. And if Judge Story meant any thing more than to give a prima facie force to the certificates in favor of marshals' accounts by one of the court, he probably intended to confine it, or was considering, at the time, only such items as had thus been passed upon in formal judgments as to bills of cost in actions where the United States was one of the parties. See The Apollon, 9 Wheat. [22 U. S.] 362. In such a case, I might feel justified in thinking with him, that the accounting officers ought to conform to the certificate. But that is not this case, nor resting on a like principle. Because there, if judgment could be properly rendered against the United States as against an individual for costs, when the failing party in an action, it would be. Yet as that is not done by the courts of the United States, the certificate of the judge is only the evidence that the costs are due rather than the judgment.

Entering then into the inquiry as to the lawfulness of the several claims here offered in set-off by the marshal, and not feeling bound by the certificate of the district judge ex parte in their favor, though, like all his opinions, entitled to much respect, I will first consider the claim for services of the venires. The provision of law on this claim is to be found in the 1st section of the act of February 28, 1799, c. 19 (1 Stat. 624). That allows to the marshal "for summoning each grand and other jury, four dollars, provided that in no case shall the fees for summoning jurors to any one court exceed fifty dollars; and in those states where jurors, by the laws of the state, are drawn by constables, or other officers of corporate towns or places by lots, the marshal shall receive for the use of the officers employed in summoning the jurors and returning the venire, the sum of two dollars; and for his own trouble in distributing the venire, the sum of two dollars." In Maine, the marshals do not summon the juries, but distribute venires to the town-clerks, and the summoning is done by them or constables. It has already been decided by this court, that the marshal is entitled to two dollars for distributing each venire, as they are distributed in the state of Maine, though formerly the usual charges of allowance were, like the words of the act, singular, and only two dollars for distributing the whole; treating it as the service of only one venire, called the "grand venire," and which is directed to him. U. S. v. Cogswell [Case No. 14,825]. If he summoned a jury, as is the practice in some states, he received four dollars for each jury or panel, but not to exceed fifty

dollars, however many panels were summoned at any one term. But if he did not summon the jury, and constables did it, on such venires issued to them, he holding and executing only the grand venire, the fees were divided, assigning two dollars to him and two to the constable. It is now argued, that the marshal should be allowed not only two dollars for distributing each sub-venire, but travel; because, by the same section, he is allowed, beside two dollars "for the service of any writ, warrant, attachment or process," five cents per mile "for his travel out in serving each writ, warrant, attachment or process aforesaid." But it is to be remembered, that this last provision precedes that for summoning jurors, and hence does not relate to them under the general expression of serving "process" or travel to serve process. Otherwise, no special provision for summoning jurors would have been necessary, being embraced already in the former one for serving a process. Again, it is not usual nor necessary for marshals to incur any travel in distributing venires, but it has in most cases been done through the postoffice, and two dollars for merely thus distributing each, is a liberal compensation. Nor does the limit of all the fees for summoning juries to any one court, to fifty dollars, imply that travel is to be allowed; because, if allowed, it would usually increase the aggregate to more than fifty dollars. For with a grand jury of twenty-three, and two petit juries of twenty-four, or only one of twelve, the aggregate for service alone would, by this construction, often exceed fifty dollars a term. In fine, distributing the venires is contemplated by the act to be a different duty from serving them, as the former is called by a different name, and done by a different officer, in cases like this, that is, by the marshal; while the service is usually by a constable. Only two dollars, then, can be allowed to the marshal in this case for distributing each venire; and where the aggregate exceeds fifty dollars at any one term of the court, it is to be reduced and limited to that amount.

2. The claim for serving an execution on the property of Wingate, is usual in amount, and the only objection to its payment, the service having been performed by the United States, is, that the property has not yet been redeemed by the debtor, or sold by the United States, so as to realize or collect the costs. But that seems a poor apology on the part of a creditor for not paying others, who have performed useful services for hire, and where, as in this case, perhaps, certainly in one of a like kind in this state, the government is occupying the property extended on for a custom-house, and does not contemplate selling it at all. In some cases, also, the government does not sell the property during a third of a century, and one is fresh in my recollection of an extent on lands of Edward Randolph, attorney-general under

Washington, which never were redeemed or sold till the speculating era of 1834 and 1835, when the expectation of gold mines upon them, induced some one to buy at a high price. Could it be reasonable, or just, or legal, for the marshal or his heirs to wait so long for his fees in serving that extent? The whole difficulty on this point has arisen from an old form in the treasury, not crediting the debtor himself in cases of extents on land until it was sold by the government, and thus continuing him on the books nominally a debtor or defaulter for years after the whole claim has been thus satisfied. But the practice has been altered, or was directed to be; and there is no more excuse for the government not paying the fees after it has received them in land, than after they are received in money, provided an appropriation exists applicable to it. Let this item, then, be allowed.

3. The charge for superintending prisons in Maine is not taxable. There is no act authorizing it, and no order of the court shown, requiring such an examination by the marshal. Again, there is little foundation for any claim on this account in the general relation and duties of the marshal as to the jails of the states. He is not the keeper of them. He has no control over them. He neither repairs the jails, nor feeds the prisoners, nor regulates their police. Congress, September 23, 1789 (1 Stat. 96), recommended to the several states to pass laws to receive prisoners for the United States, for a reasonable compensation. And in 1791 and 1821, congress authorized the marshal to keep his prisoners elsewhere in safety, if the states withheld the use of their prisons. 1 Stat. 225; 3 Stat. 646. So as to the state prisons; we can use them for punishment, paying the expense, and letting our prisoners be employed and treated as the state convicts are. In point of fact, also, it is stated there is no evidence of actual examination having been made in that instance, justifying in any view so extraordinary and large a claim. This was properly rejected by the district court, and also the amount claimed for service of a writ from New York, and which is now abandoned by the defendants.

4. The only remaining claim is for commissions on fees, paid to the deputy marshals or assistants in taking the census. It is not pretended that there is any clause in the act for taking the census, which expressly authorizes this claim, but it rests on the hypothesis of being an act, not enjoined by law, and for doing which when requested, the marshal should be paid a reasonable commission. The commissions of the marshal, by the act of 1792, on payments over to others there designated, is two and a half per cent., and that rate has frequently been deemed proper in cases where any commissions for like services are allowable. But, in my view, these payments to the assistants were made by him officially and as a service properly belonging to his official station. He selected them—he employed and regulated them—he received, therefore, the money for them, and had general compensation for his duties in respect to the census, fully sufficient to indemnify him for such an incidental labor. It has been adjudicated in various cases, such as U. S. v. Wilkins, 6 Wheat. [19 U. S.] 135: U. S. v. McDaniel, 7 Pet. [32 U. S.] 1; U. S. v. Ripley, Id. 18; U. S. v. Fillebrown. Id. 28; U. S. v. Mann [Case No. 15,716]; Gratiot v. U. S., 15 Pet. [40 U. S.] 336; and in U. S. v. Gratiot, 4 How. [45 U. S.] 80,—that a reasonable compensation is proper to be made to officers for services clearly unofficial, clearly disconnected and exterior to their duties under their commissioners as officers. And though, in my view. some of these cases have gone too far on the facts, holding services to be unofficial which seem to me not entirely dehors from their duties as officers, yet I do not feel justified in departing from the decisions of the supreme court on this subject, till altered by that tribunal itself, or till new legislation occurs by congress applicable to new cases.

I do not rest this conclusion on the argument in this case by the United States, that the $200 salary given to marshals, "as a full compensation for all extra services," should be construed to embrace all labor and services of all kinds not specified nor specifically paid. On the contrary, I think that relates to extra services or duties, which are by law devolved on him as marshal. And I decide this point exclusively on the ground, that the paying over this money to his assistants was an incident to his official station and duties, and not a service entirely foreign or disconnected with it; and consequently, that commissions for doing it, not being given by any law, are not allowable. Gratiot v. U. S., 15 Pet. [40 U. S.] 336, 4 How. [45 U. S.] 80.

There is, likewise, a claim of interest set up by the defendants. I am willing to allow it on the item improperly rejected at the treasury department, beginning at the date of the rejection, and I do it on the precedent of the case of U. S. v. Cogswell [supra]. But if allowed to the defendants on the principles that they have been kept out of the money illegally since that rejection, the same principle renders it proper to allow interest to the United States, since the demand of the balance due them, and of which they have since been illegally deprived by the defendants. Making the computations, then, between the parties, on the principles I have explained, the United States is entitled to judgment for the balance.

Under these views, the judgment below, being in some respects erroneous, must be reversed, and the verdict be set aside, and a venire de novo ordered.

UNITED STATES (SMITH v.). See Case No. 13,122.