Scoeield, J.,
delivered the opinion of the court:
As this case was heard upon demurrer, the facts must be taken as stated in the petition.
It appears that on July 1, 1884, the claimant was duly ap *409 'pointed clerk of the Committee on Commerce ot tbe House of Representatives, with a salary of $2,000 a year.
July 7,1884, Congress appropriated $2,000 to pay this salary for the fiscal year ending June 30, 1885. (23 Stat. L., 163.)
March 3, 1885, Congress again appropriated $2,000 to pay this salary for the fiscal year ending June 30, 1886. (23 Stat. L., 392.)
The claimant held this office of clerk until January 7, 1886, when his successor was appointed.
Hé has been paid for his services as committee clerk at the rate of $2,000 a year up to March 14, 1885.
March 14, 1885, he was appointed by the President a clerk in the Executive office. It is understood, though not stated in the petition, that he has been paid as such Executive clerk the lawful salary from March 14, 1885, to March 1, 1886.
The Forty-eighth Congress expired March 4, 1885, and the Forty-ninth did not assemble until December 7, 1885. From March 4, 1885, to January 7, 1886, there was no Committee on Commerce of the House of Representatives in existence, and the duties of the clerk, during that period, were merely nominal.
According to the rules and usage of the House, of which the court takes notice, this class of clerks hold their respective offices until their successors are appointed in the succeeding Congress. Their salaries are paid monthly. This practice has always been recognized by the Treasury Department, and the accounts settled and paid accordingly.
The claim is for the unpaid balance of salary from March 14, 1885, to January 7, 1886, amounting to $1,627. It is not denied that the claimant would have been entitled to this balance if he had not been appointed and received a salary as Executive clerk during the same time.
. It is now contended that he is prohibited by section 1765 of the Revised Statutes to draw the two salaries. That section is as follows:
“ No officer in any branch of the public service, or any other person whose salary, pay, or emoluments are fixed by law or regulations, shall receive any additional pay, extra allowance, or compensation, in any form whatever, for the disbursement of public money or for any other service or duty whatever, unless the same is authorized by law and the appropriation *410 therefor explicitly states that it is for such additional pay, extra allowance, or compensation.”
It is difficult to frame a general statute, as lawyers and judges have frequent occasion to observe, in language that will work out in all cases the intended result. This section well illustrates this difficulty. That it was intended to cut off “ additional pay, extra allowance, or remuneration” for “ service or duty” which is not authorized by law, and for which there is no express appropriation, is very clear ; but what pay is to be considered “ additional or extra,” and what employment is to be considered “ other service or duty,” is quite uncertain. Many cases arising in the administration of this law have been carried to the Supreme Court for settlement. Many more have been heard here.
It has been several times decided in this court that this statute does not prohbit the holding and receiving the salaries of two offices by one person, at the same time, provided the duties are not incompatible. This doctrine is maintained in Collins's Case (15 C. Cls. R., 22), where the question is elaborately discussed by Judge Richardson (now chief justice). The opinion, after reviewing the original statutes, which are reproduced in sections 1763, 1764, and 1765 of the Revised Statutes, and the many authorities relating thereto, sums up as follows:
“We have the official opinions of six Attorneys-General that the statutes do not prohibit a person from drawing the salaries of two distinct offices which he legitimately holds: That of Mr. Crittenden,‘in 1851 (5 Opin., 765); of Mr. Cushing, in 1853 (6 id, 80); of Mr. Black, m lb60, receding from a former contrary opinion (9 id, 507); of Mr. Bates, in 1863 (10 id, 446); Mr. Evarts, in 1868 (12 id, 459); and of Mr. Devens, June 11, 1877.
“The Supreme Court appears to have held to the same doctrine in 1858, notwithstanding the proviso in the act of 1850 before cited, and the prohibitions contained in the acts of 1839,' 1842, and 1852, now constituting sections 1763, 1764, and 1765 of the Revised Statutes. (Converse v. United States, 21 How., 463.)
“Furthermore, Congress, at its first session after Attorney-General Crittenden’s opinion was promulgated, passed the act of 1852 (now Rev. Stat., § 1763), relaxing the provisions of the former act, and, according to the Revised Statutes, superseding it. This act is drawn in language which seems peculiarly appropriate for the adoption of the construction given by Mr. *411 Crittenden in tbe extract quoted in the opinion of Mr. Evarts, which we have just cited. At the same time Congress limited the application of the act to the case of officers whose salary is $2,500 a 3 ear or over.
“In the several acts referred to, prohibiting extra allowances and additional compensation to public officers, Congress not only seems carefully to have avoided enacting, in distinct and clear language, that no person shall receive the salary of more than one office which he holds at the same time, but they repealed the proviso in the act of 1850 which most nearly expressed that idea.
“Upon the whole, whatever may have been the true construction of the proviso in the act of 1850, now no longer in force, it seems evident from the phraseology of sections 1763, 1764, and 1765 of the Revised Statutes and the acts from which they werd taken, especially when interpreted by the light of the circumstances under which the same were enacted, and in connection with the opinions which we have cited, that a public officer who legitimately holds two offices may receive the salary of each.”
The defendants were at that time satisfied with this decision and took no appeal to the Supreme Court. Indeed, they do not now question its correctness. They contend, however, that it should only apply to that class of officers who are recognized as officers under the Constitution by the Supreme Court in the case of The United States v. Germaine (99 U. S. R., 508). The court there decided that a certain criminal statute referred only to officers selected in the particular manner pointed out in the Constitution, and therefore did not apply to a surgeon appointed by the Commissioner of Pensions to examine applicants for pensions and report upon their disabilities. They did not, however, decide that he was not entitled to the compensation allowed by law for that service. The decision is good law undoubtedly, but it has no application to this case. If the claimant were attempting to draw two salaries under a statute which conferred that right only upon persons who held two offices, an inquiry as to what public service constituted an office would become necessary. In that case the Germaine decision would be pertinent.
What difference does it make, so far as compensation is concerned, how the appointment was made, provided it was done lawfully? So far as compensation is concerned, what difference does it make whether the employment constitutes an office defined in the Constitution, or some other office or position, *412 provided always it exists under a constitutional law, and has a certain tenure, certain duties, and a certain salary, with an appropriation for its payment ?
The principle of the Collins Case is not limited to officers recognized by the Constitution, but is equally applicable to all lawfully appointed officers. But even if the case of Germaine goes so far as to cut off the salary of an officer or employe who has not been appointed in the manner pointed out in the Constitution, it still does-not interfere with the claimant’s ease? for he was appointed in that manner to both positions. The Constitution provides that the Senate and House shall choose their own officers and may “determine the rules of their proceedings.” The claimant was appointed clerk to the committee, under the authority thus granted, and to the Executive clerkship he was appointed by the President.
But aside from all these considerations the case does not appear to come under the prohibition of section 1765 in any manner of construction. It is not doubted that the claimant was in the public service, for he held two positions. Each position, however, was authorized by law, each had a salary affixed, for the payment of which there was an express appropriation. To be sure he was forbidden to claim “additional pay, extra allowance, or compensation” for “some other service or duty.” But what constitutes the “additional pay” and the “other service?” The Supreme Court in Converse v. The United States (21 How., 463) answers the question in the following' language:
“These words, added to the provisions in the act of 1839, only show that the legislature contemplated duties imposed by superior authority upon the officer as a part of his duty, and which the superior authority had in the emergency a right to impose, and the officer wras bound to obey, although they were extra and additional to what had previously been required. But they can by no fair interpretation be held to embrace an employment which has no affinity or connection, either in its character or by lawr or usage, with the line of his official duty, and where the service to be performed is of a different character and for a different place, and the amount of compensation regulated by law.”
This decision is cited and approved in United States v. Brindle (110 U. S. R, 688).
*413 According to these decisions the claimant’s case is not affected by the prohibition of section 1765.
While we are of the opinion that the claimant is entitled to recover on the law of the case, we overrule the demurrer the more willingly because we thereby give both parties an opportunity to be heard in the Supreme Court, where the question may be finally determined for the guidance of the learned and faithful officers oí the Treasury Department.
The demurrer is overruled with leave to the defendants to plead to the petition within ten days. If they decline so to jilead, judgment will be entered for the claimant tor the sum ■of $1,627.
Nott, J., concurred iu the conclusion.
Weldon, J., was prevented by illness from taking part in the decision of this case.