## HARMON v. UNITED STATES.

*(Circuit Court, D. Maine. September 23, 1890.)*

1. CLAIMS AGAINST UNITED STATES—ALLOWANCE—COMPTROLLER'S DECISION.

Act Cong. March 3, 1887, c. 359, (24 St. 505,) § 2, gives the circuit and district courts concurrent jurisdiction, within certain limits as to amount, of all matters which by section 1 "the court of claims shall have jurisdiction to hear and determine," including all claims founded on any law of congress, except for pensions, or on any contract with the government: "provided, however, that nothing in this section shall be construed as giving to either of the courts herein mentioned jurisdiction to hear and determine claims  *  *  *  which have heretofore been rejected or reported on adversely by any court, department, or commission authorized to hear and determine the same." By Rev. St. U. S. § 269, it is made the duty of the first comptroller of the treasury "to superintend the adjustment and preservation of the public accounts, subject to his revision." Section 191 provides that "the balances which may from time to time be stated by the auditor, and certified to the heads of departments by the commissioner of customs, or the comptrollers of the treasury, upon the settlement of public accounts, shall not be subject to be changed or modified by the heads of departments, but shall be conclusive upon the executive branch of the government, and be subject to revision only by congress or the proper courts." *Held*, that the proviso must be limited to a rejection of a claim, or an adverse report thereon, by a court, department, or commission which determines the rights of parties, and that therefore the disallowance of a marshal's account for fees by the first comptroller of the treasury was not within the proviso, as his decision was conclusive only within the executive department.

2. UNITED STATES MARSHAL—EXPENSES—REIMBURSEMENT.

A marshal is entitled to be reimbursed for money paid, with the approval of the attorney general, to whom Rev. St. U. S. § 368, gives general supervisory power over the accounts of the court officers, on a requisition of the district attorney, for blanks for the necessary use of the district attorney.

3. SAME—MILEAGE—ATTENDING COURT.

Under Rev. St. U. S. § 829, cl. 24, allowing a marshal "for traveling from his residence to the place of holding court, to attend a term thereof, 10 cents a mile for going only," the marshal is not restricted to a single travel at each term; but, where court adjourns over one or more days, he may return home, and charge travel for going to attend the term at the day to which it is adjourned. He may also charge travel for going to each special term.

4. SAME—SERVING PROCESS.

Rev. St. U. S. § 829, cl. 25, allowing a marshal "for travel, in going only, to serve any process, warrant, attachment, or other writ, including writs of subpœna in civil or criminal cases, six cents a mile, to be computed from the place where the process is returned to the place of service, or, when more than one person is served therewith, to the place of service which is most remote, adding thereto the extra travel which is necessary to serve it on the others," and providing, "But, when more than two writs of any kind required to be served in behalf of the same party on the same person might be served at the same time, the marshal shall be entitled to compensation for travel on only two of such writs," where the marshal serves several precepts against different persons for different causes, he is entitled to full travel on each, though they are all served on the same trip.

5. SAME—TRANSPORTATION OF PRISONER.

The clause of the fee-bill allowing for travel in going only as a compensation for actual travel in going and returning being independent of the clause allowing fees for transportation of officer and prisoner only while the officer has the prisoner in custody, he is entitled both to transportation for himself and prisoner and to travel in going to serve a warrant of removal or warrant to commit.

6. SAME—SERVING SEVERAL WRITS.

Act Cong. Feb. 22, 1875, c. 95, § 7, after making certain provisions for the allowance of the accounts of attorneys, marshals, and clerks, further provides that "no such officer or person shall become entitled to any allowance for mileage or travel not actually and necessarily performed under provisions of existing law." *Held*, that the act did not preclude a marshal from full mileage on each of two or more writs served at the same time and place on different persons, but applied only to cases in which there was no actual travel, as where a writ was sent through the mail to be served by a deputy near the place of service.

**7. SAME—FEES—SERVING WRITS.**

The marshal's duty to serve, and right to compensation for the service of, precepts which are agreed to have been "duly issued by the court or a commissioner, in accordance with established usage," cannot be affected by the opinion of the comptroller that the issue of such precepts was unnecessary.

**8. SAME—TRANSPORTATION OF PRISONERS—HACK HIRE.**

The hire of hacks to transport prisoners to and from court being agreed to have been in accordance with the usual practice, and to have always before been allowed, it will be presumed to have been required by the court for the prompt dispatch of business.

**9. SAME—ATTENDING HEARING BEFORE COMMISSIONER.**

Under Rev. St. U. S. § 829, cl. 23, allowing a marshal for attending examinations before a commissioner, and bringing in, guarding, and returning prisoners charged with crime, and witnesses, two dollars a day, and for each deputy, not exceeding two, necessarily attending, two dollars a day," the number of officers necessary to preserve order, not exceeding the marshal and two deputies, is a matter to be decided by the commissioner in the honest exercise of his discretion.

**10. CRIMINAL LAW—EXAMINATION OF POOR CONVICT.**

The examination by a commissioner of a poor convict, on his application for discharge from custody, under Rev. St. U. S. § 1042, is a proceeding in a criminal case.

*Edward M. Rand,* for petitioner.
*Isaac W. Dyer,* U. S. Atty.
Before GRAY and COLT, JJ.

GRAY, J. This is a petition under the act of March 3, 1887, c. 359, (24 St. 505,) to recover $1,770.60, fees and disbursements of the petitioner, while marshal of the United States for this district, from March 9, 1886, to October 1, 1888, which were included in his account presented to the district court, proved to its satisfaction by his oath, and approved by that court, and forwarded to the first auditor of the treasury, and by him to the first comptroller, and disallowed by the latter, and are set forth in detail in schedules annexed to the petition. The United States, by a plea in the nature of *non assumpsit,* put in issue the petitioner's right to recover. The United States filed the following admission in writing, signed by the district attorney:

"In the above-entitled cause it is admitted on behalf of the respondents that the services charged in the petition and schedules were actually rendered, that the disbursements charged were actually made in lawful money, and that the sums charged as paid to witnesses were actually and in every instance paid upon orders issued in due form, either by the court, or by a commissioner of the circuit court, in the respective cases."

The counsel for both parties signed and filed the following agreement and stipulation, entitled "Agreed Statement of Facts:"

"In this case it is hereby stipulated and agreed as follows, viz.:"

"*First.* As to jurisdiction: Of the total amount claimed by the petitioner, items amounting to $140.32 were disallowed by the first comptroller prior to March 3, 1887.

"*Second.* As to the items claimed: They are correctly classified and set forth in the abstract of schedules annexed to the brief of the petitioner, the substance of which is as stated below.

"*Third.* As to the several classes of claim: (1) Distributing *venires,* paid constables, $20. Said amount was so paid. (2) Distributing *venires,* marshal's fees, $186. If the marshal is entitled to a fee of $2 for each *venire* distributed to the several constables, he is entitled to the amount claimed. But it is claimed by the respondents that said amount was erroneously charged in

the marshal's account as mileage, and was for that reason disallowed by the comptroller. (3) Paid for blanks for U. S. attorney, $14. Upon requisition of the U. S. attorney, approved by the attorney general, this amount was paid by the marshal for blank indictments and informations for the necessary use of the U. S. attorney. A similar charge has since been allowed by the comptroller. (4) Marshal's travel to attend court, $156.60. Of the amount claimed, $118.80 is for travel to attend regular terms of the circuit and district courts; and one travel, $1.80, has been allowed and paid to the marshal for travel at each of said terms. Said $118.80 is charged for travel on days when said courts were held by adjournment over an intervening day, and were not held on consecutive days. The remaining sum of $37.80 is charged for travel to attend twenty-one special courts or special terms of the district court. The docket of the district court shows that said twenty-one special courts or special terms were duly held. (5) Expenses endeavoring to arrest, $4. This charge for two days at $2 was disallowed by the comptroller, solely because he claimed it was not charged in the proper account. (6) Travel to serve precepts, $227.-60. In some instances the officer had in his hands for service several precepts against different persons for different causes, and made service of two or more of such precepts in the course of one trip, making but one travel to the most remote point of service, but charging full travel on each precept. The following item, viz., '1886, April 24. In U. S. v. Jeffrey Gerroir, travel to serve subpœna from circuit court, Massachusetts district, at Cranberry Isle, 314 miles, $18.84,' is suspended by the comptroller because the only actual travel was from Portland to Cranberry Isle, say 206 miles. If travel as charged is not to be allowed, then this charge should be for 206 miles, $12.36. In serving a warrant of removal (in every instance within this district) or warrant to commit, the marshal has charged travel, while the comptroller claims that, transportation of officer and prisoner being allowed, no travel can be charged. (7) Service of precepts, $63. The several precepts were duly issued by the court or a commissioner, in accordance with established usage. It is claimed by the comptroller that the issue of such precepts was unnecessary. (8) Transportation of officer and prisoner, $31.30. Of this amount $31.10 was for the transportation of several prisoners, at ten cents a mile for each. The remaining sum of twenty cents was for transportation of the officer in charge of a prisoner, ten cents a mile on two different days. (9) Transporting prisoners to and from court, $78. This amount was actually paid for hack hire in accordance with the usual practice, and the charge had always before been allowed. The comptroller claims that the amount was excessive and the use of hacks unnecessary. (10) Attendance before commissioner, $144. Two, and sometimes three, officers attended in some cases before a commissioner upon the examination of a person charged with crime or a poor convict. The comptroller claims that the attendance of more than one officer was unnecesary; and that in the case of poor convict hearings under Rev. St. § 1042, no attendance is to be allowed, as they are not persons charged with crime. (11) Witness fees paid, $836.10. This point is covered by the admission previously filed in this case.

"*Fourth.* As to allegations in the petition: The marshal duly rendered his accounts as stated, and the same were duly presented to the court and approved, and forwarded to the accounting officers of the treasury, as alleged."

This court, pursuant to section 7 of the act of March 3, 1887, c. 359, under which this petition is filed, (24 St. 506,) specifically finds the facts of the case to be as above admitted and agreed, and states, as a conclusion of law, that the whole of the petitioner's claim, excepting the sum of $6.48, part of item 6, must be allowed, for the following reasons:

The most interesting question in the case is whether this court has jurisdiction to pass upon those items of the claim, amounting to $140.32, which were disallowed by the comptroller before March 3, 1887. By section 2 of that act, the circuit and district courts of the United States are vested with concurrent jurisdiction within certain limits as to amount, of all matters which by section 1 "the court of claims shall have jurisdiction to hear and determine," including—

"All claims founded upon the constitution of the United States or any law of congress, except for pensions, or upon any regulation of an executive department, or upon any contract, expressed or implied, with the government of the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect of which claims the party would be entitled to redress against the United States either in a court of law, equity, or admiralty, if the United States were suable: provided, however, that nothing in this section shall be construed as giving to either of the courts herein mentioned jurisdiction to hear and determine claims growing out of the late civil war, and commonly known as 'war claims,' or to hear and determine other claims which have heretofore been rejected, or reported on adversely, by any court, department, or commission authorized to hear and determine the same."

Upon the question whether a disallowance of an account by the first comptroller of the treasury is within the latter part of this proviso, there has been a diversity of judicial opinion. The circuit court for the eastern district of Missouri held that it was, and its decision was followed by the district court in this district, as well as in the eastern district of Missouri. *Bliss* v. *U. S.*, 34 Fed. Rep. 781; *Rand* v. *U. S.*, 36 Fed. Rep. 671; *Preston* v. *U. S.*, 37 Fed. Rep. 417. But the opposite view has since been maintained, on fuller consideration, by the district court in Connecticut, in Georgia, and in Illinois. *Stanton* v. *U. S.*, Id. 252; *Erwin* v. *U. S.*, Id. 470; *Hoyne* v. *U. S.*, 38 Fed. Rep. 542. The earlier decisions are based upon section 269 of the Revised Statutes, by which it is made the duty of the first comptroller "to superintend the adjustment and preservation of the public accounts, subject to his revision;" and upon section 191, which is as follows:

"The balances which may from time to time be stated by the auditor and certified to the heads of departments by the commissioner of customs, or the comptrollers of the treasury, upon the settlement of public accounts, shall not be subject to be changed or modified by the heads of departments, but shall be conclusive upon the executive branch of the government, and be subject to revision only by congress or the proper courts. The head of the proper department, before signing a warrant for any balance certified to him by a comptroller, may, however, submit to such comptroller any facts in his judgment affecting the correctness of such balance; but the decision of the comptroller thereon shall be final and conclusive, as hereinbefore provided."

The clause of section 269, as to the general duty of the comptroller to superintend the adjustment and preservation of public accounts subject to his revision, is a re-enactment of a provision of earlier acts, reaching back to the foundation of the government. Acts Sept. 2, 1789, c. 12, § 3, (1 St. 66;) March 3, 1817, c. 45, § 8, (3 St. 367;) March 3, 1849, c. 108, § 12, (9 St. 396.) Section 191 is a re-enactment of the act of March 30, 1868, c. 36, (15 St. 54.) Before that act, it was settled by

a series of opinions of successive attorney generals that the action of the comptroller, or of the commissioner of customs, was subject to the revision of heads of departments. See opinion of Attorney General Stanbery, of September 15, 1866, and earlier opinions therein referred to. 12 Op. Attys. Gen. 43. The action of accounting officers of an executive department was never considered as a conclusive determination when the question was brought before a court of justice. Acts of March 3, 1797, c. 20, (1 St. 512;) May 15, 1820, c. 107, § 4, (3 St. 595;) Rev. St. § 3636; *U. S.* v. *Jones,* 8 Pet. 375, 384; *U. S.* v. *Bank of Metropolis,* 15 Pet. 377, 401; 1 Op. Attys. Gen. 624; 5 Op. Attys. Gen. 650.

The sole purpose and effect of the act of 1868 were to regulate the business of the executive departments; to define the comparative powers of the comptrollers or the commissioner of customs on the one hand, and of the heads of departments on the other, in the performance of their executive and ministerial duties, and to make the decision of a comptroller, or of the commissioner of customs, final and conclusive so far as the executive department was concerned, but not to affect the powers of the legislature or of the judiciary. 13 Op. Attys. Gen. 5; 14 Op. Attys. Gen. 65; 15 Op. Attys. Gen. 192, 596, 626; *Steam-Boat Co.* v. *U. S.,* 5 Ct. Cl. 55. The act itself, after providing that the balances certified to the heads of departments by the comptroller, or by the commissioner of customs, upon the settlement of public accounts, "shall not be subject to be changed or modified by the heads of departments, but shall be conclusive upon the executive branch of the government," adds, in equally unequivocal terms, "and be subject to revision only by congress or the proper courts;" and the further provision, which makes the decision of the comptroller upon facts submitted to him by the head of a department "final and conclusive," reserves the legislative and judicial authority with equal clearness by the qualifying words "as hereinbefore provided." Act of March 30, 1868, c. 36, (15 St. 54;) Rev. St. § 191. The judgments of the court of claims, and of the supreme court on appeal from its decisions, accord with this view, and uniformly treat the action of the accounting officers as not conclusive in a suit between the United States and the individual. *McElrath* v. *U. S.,* 12 Ct. Cl. 201, 102 U. S. 426, 441; *Chorpenning* v. *U. S.,* 11 Ct. Cl. 625, 94 U. S. 397, 399; *Pittsburgh Sav. Bank* v. *U. S.,* 16 Ct. Cl. 335, 351, 352, 104 U. S. 728, 734; *Wallace* v. *U. S.,* 20 Ct. Cl. 273, 116 U. S. 398, and 6 Sup. Ct. Rep. 408; *Saunders* v. *U. S.,* 21 Ct. Cl. 408, 120 U. S. 126, and 7 Sup. Ct. Rep. 467.

In section 1 of the act of March 3, 1887, c. 359, the words "hear and determine" are used four times; once as applied to the court of claims, twice as applied to that court and to the circuit and district courts, and again as applied to "any court, department, or commission." These words must be taken to be used in each instance in the same sense, and as implying an adjudication conclusive as between the parties, in the nature of a judgment or award. The proviso that nothing in this section shall be construed as giving to either of the courts named in the act jurisdiction to hear and determine any claims

"which have heretofore been rejected or reported on adversely by any court, department, or commission authorized to hear and determine the same," must be limited to a rejection of a claim, or an adverse report thereon, by a court, department, or commission, which determines the rights of the parties, such as the approval by the secretary of the treasury of an account of expenses under the captured and abandoned property acts, as in *U. S.* v. *Johnston*, 124 U. S. 236, 8 Sup. Ct. Rep. 446, or the decision of an international commission, as in *Meade* v. *U. S.*, 9 Wall. 691. Moreover, the court of claims even before the passage of the act of 1887, had jurisdiction of claims under an act of congress or under a contract, and could therefore hear and determine claims for legal salaries or fees. *Mitchell* v. *U. S.*, 18 Ct. Cl. 281, 109 U. S. 146, and 3 Sup. Ct. Rep. 151; *Adams* v. *U. S.*, 20 Ct. Cl. 115; *U. S.* v. *McDonald*, 128 U. S. 471, 9 Sup. Ct. Rep. 117; *U. S.* v. *Jones*, 131 U. S. 1, 16, 9 Sup. Ct. Rep. 669.

We cannot believe that the act of 1887, entitled "An act to provide for the bringing of suits against the government of the United States," and the manifest scope and purpose of which are to extend the liability of the government to be sued, was intended to take away a jurisdiction already existing, and to give to the decisions of accounting officers an authority and effect which they never had before.

The other questions in the case may be more briefly disposed of. Many of the objections of the comptroller appear to be conceived in disregard of the express terms of the statutes, or of the orderly and efficient administration of justice, and, if sustained, would greatly embarrass the courts as well as the marshals of the United States in the performance of their appropriate duties.

1, 2. In this district, the jurors being drawn by constables in accordance with the laws of the state, the fees paid by the marshal to the constables for their services, as well as those charged by him for his own services, in distributing *venires*, are in accordance with the express words of the Revised Statutes, (section 829, cl. 3,) and with the settled course of decision in this circuit. *U. S.* v. *Cogswell*, 3 Sum. 204; *U. S.* v. *Smith*, 1 Woodb. & M. 184; *U. S.* v. *Richardson*, 28 Fed. Rep. 61, 73.

3. The sums paid by the marshal, upon the requisition of the district attorney, approved by the attorney general, for blank indictments and informations for the necessary use of the district attorney, having been paid by the marshal with the approval of the attorney general, exercising the general supervisory power conferred by Rev. St. § 368, the marshal is entitled to be repaid those sums.

4. By Rev. St. § 829, cl. 24, the marshal is to be allowed "for travelling from his residence to the place of holding court, to attend a term thereof, ten cents a mile for going only." This allowance is not expressly, or by any reasonable implication, restricted to a single travel at each term, but extends to every time when he may be expected to travel from his home to attend a term of court. If the court sits for any number of days in succession, he should continue in attendance, and is en-

titled to only one travel. But, if the court is adjourned over one or more intervening days, he is not obliged to remain at his own expense at the place of holding court, but may return to his home, and charge travel for going anew to attend the term at the day to which it is adjourned. His right to charge travel for going to each special court or special term, is, if possible, still clearer, and is scarcely contested.

5. The charge for expenses in endeavoring to make an arrest was no more than the statute permits to be allowed. Rev. St. § 829, cl. 18.

6. The general rule prescribed by Rev. St. § 829, cl. 25, allows the marshal "for travel, in going only, to serve any process, warrant, attachment, or other writ, including writs of subpœna in civil or criminal cases, six cents a mile, to be computed from the place where the process is returned to the place of service." The explanatory or restrictive provisions as to the cases of two persons served with the same precept, and of more than two writs in behalf of the same party against the same person, emphasize the general rule, and confirm its application to several precepts against different persons for different causes, although served at the same time. This clause of the fee-bill, which allows for travel in going only, as a compensation for actual travel in both going and returning, is wholly independent of, and unaffected by, the distinct clause allowing fees for transportation of officer and prisoner, only while the officer has the prisoner in custody, and without regard to any additional distance which he may be obliged to travel out and back in serving the warrant of arrest or removal. The United States rely on the act of February 22, 1875, c. 95, § 7, which, after providing that all accounts of attorneys, marshals, and clerks for mileage and expenses shall be audited, allowed, and paid as if the act of June 16, 1874, c. 285, had not been passed, further provides that "no such officer or person shall become entitled to any allowance for mileage or travel not actually and necessarily performed under provisions of existing law." 18 St. 334, 72. We concur in the opinion of Attorney General Devens, that this last provision, which manifestly includes marshals, does not deny a marshal full travel on two or more writs in his hands at the same time, and served at the same place on different persons, inasmuch as his travel is actual and necessary to serve each and every of those writs; but that "that provision was intended to apply to cases in which no actual travel is performed in serving process, as, for instance, where the writ is sent through the mail to be served by a deputy at or near the place of service." 16 Op. Attys. Gen. 165, 169. It follows that, by the statute of 1875, the travel to be allowed to the marshal for serving at Cranberry Isle a subpœna from the circuit court for the district of Massachusetts must be limited to his actual travel within his district from Portland to Cranberry Isle, and cannot include the constructive travel from Boston to Portland, amounting to $6.48; and that the marshal is entitled to recover the rest of the sums charged for travel to serve precepts.

7. The marshal's duty to serve, and right to compensation for the service of, precepts which are agreed to have been "duly issued by the

court or a commissioner, in accordance with established usage," cannot be affected by the opinion of the comptroller that the issue of a precept was unnecessary.

8. The fees charged for transportation of officers and prisoners are in exact accordance with Rev. St. § 829, cl. 20.

9. The hire of hacks to transport prisoners to and from court is agreed to have been in accordance with the usual practice, and to have always before been allowed, and must be presumed to have been required by the court for the prompt dispatch of business.

10. The fees charged for the attendance of a marshal and his deputies before a commissioner of the circuit court were in accordance with the provision of the statutes allowing "for attending examinations before a commissioner, and bringing in, guarding, and returning prisoners charged with crime, and witnesses, two dollars a day; and for each deputy not exceeding two, necessarily attending, two dollars a day." Rev. St. § 829, cl. 23. Within the number, thus restricted, of the marshal and two deputies, the question how many officers were necessary to preserve order was a matter to be decided by the commissioner, in the honest exercise of his discretion, and according to the existing exigency. No evidence has been produced to control the presumption that the commissioner was governed by a due regard to efficiency and economy in the administration of justice, or to affect the weight of the approval by the district court of the charge for these services, upon satisfactory proof by the marshal's oath that they were actually and necessarily performed. Act Feb. 22, 1875, c. 95, § 1, (18 St. 333.) The duty of the marshal to obey the commissioner's order, and his right to recover fees for the attendance of himself and his two deputies accordingly, were not dependent upon the subsequent opinion of the comptroller. The commissioner's examination of a poor convict, on his application for discharge under Rev. St. § 1042, is a proceeding in a criminal case. *U. S.* v. *Jones,* 134 U. S. 483, 10 Sup. Ct. Rep. 615.

11. The objection of the comptroller to the recovery of witness fees paid by the marshal under order of court is in the face of the statute, which provides that "no accounts of fees or costs paid to any witness or juror, upon the order of any judge or commissioner, shall be so re-examined as to charge any marshal for an erroneous taxation of such fees or costs." Rev. St. § 846.

The result is that the petitioner is entitled to recover the sum of $1,-764.12; and, considering the frivolous and vexatious nature of the objections taken to the greater part of the petitioner's claim, it is ordered by the court, in the exercise of the discretion conferred by section 15 of the act of March 3, 1887, c. 359, (24 St. 508,) that there be judgment for the petitioner for that sum, and costs.