## Case No. 15,820.

### UNITED STATES v. MORSE.

[3 Story, 87.] [1]

Circuit Court, D. Maine.   May Term, 1844.

COLLECTOR OF CUSTOMS—EMOLUMENTS—ADDITION-
AL COMPENSATION AS INSPECTOR.

1. Under the act of 1822, c. 107 [3 Stat.
693], the offices of deputy collector and of in-
spector may be held by the same person at the
same time.

2. The 15th section of the same act, limit-
ing the emolument of the deputy collector to
$1,000, applies only to the emolument received
by him as deputy collector, and does not prevent
him from receiving additional compensation
for independent offices in the customs held by
him at the same time.

3. A deputy collector is not bound by that
act to perform the duties of inspector.

4. Where the words of a statute, prescribing
compensation to a public officer, are loose and
obscure, and admit of two interpretations, they
should be construed in favor of the officer.

[Cited in U. S. v. Collier, Case No. 14,833;
McKinstry v. U. S., 40 Fed. 818.]

[Cited in U. S. v. Averill, 4 Utah, 416, 7 Pac.
530; Harrington v. Smith, 28 Wis. 70.]

[5. Cited in Platt v. Beach, Case No. 11,-
215, to the point that inspectors of the cus-
toms, are, in law, officers appointed by the
head of the treasury department.]

Debt.

This case was submitted by Mr. Parks, U.
S. Dist. Atty. (the successor of Mr. Holmes,
U. S. Dist. Atty., who died pending the pro-
ceedings), and by Mr. Hobbs, for defendant,
upon the following statement of facts:

The defendant [Samuel A.] Morse, was ap-
pointed collector of the customs for the dis-
trict of Passamaquoddy on the ―― day of
June, 1836, and entered upon the duties of
his office, July 2, 1836. John A. Balkam was
appointed an inspector of the said customs,

1 [Reported by William W. Story, Esq.]
27 FED. CAS.—1

April 1, 1831, and served in that office, and re-
ceived the per diem allowance as inspector,
from that time until April 9, 1839. The said
Balkam was appointed a deputy collector for
the said district, Nov. 1, 1833, and performed
the duties of that office, and received the com-
mission therefor established by law out of
the emoluments of the office of the collector,
while acting and receiving his per diem allow-
ance as inspector. of the customs. The said
Balkam was reappointed as deputy collector
by. the defendant, Morse, on July 2, 1836,
and from that time to January 1, 1839, per-
formed the duties of the said office, and was
paid therefor by the defendant out of the
emoluments of the office of collector, the sum
of $2,407, and, at the same time, from the
customs, his per diem allowance as inspector,
and the same so paid said Balkam as deputy
collector. and inspector were charged in the
defendant's quarterly accounts; as they had
been in those of the defendant's predecessor
in office, and were settled and allowed, from
time to time, at the treasury department. It
is further agreed, that, previous to the com-
mencement of these suits, accounts of monies,
thus paid by the defendant, were submitted
to the consideration of the treasury depart-
ment, and rejected by them, after they had
been allowed and settled as aforesaid, and it
is further agreed, that any official transcript
or other official documents from the treasurer
may be referred to by either party.

The points submitted were as follows:

For the government it was contended, that
the defendant, Morse, wrongfully paid monies
of the United States to one John A. Balkam,
as deputy collector, he being also an inspector
of the customs, and that he could not hold
the two offices of deputy collector and in-
spector, and receive the pay and emoluments
at the same time, under the act of congress
(chapter 107, § 14) passed in 1822 [3 Stat.

693]. And further, that if the said Balkam could, by the said act, hold the offices of inspector and deputy collector at one and the same time, yet that, by the 15th section of the same act, the said Balkam, acting as aforesaid, could not receive "more than one thousand dollars in any one year for any services he may have performed for the United States in any office and capacity."

For the defendant it was contended, that such is not the true construction of the said act, and that the said offices are not inconsistently held by one person; and also, that, by section 10 of the said act of 1822, the said payment to Balkam is provided for as an incidental expense of the office of collector. And the defendant referred to the 18th section of the said act, as aiding in ascertaining the legislative intention.

STORY, Circuit Justice. The sole questions arising in this case are: First. Whether the deputy collector could be appointed as inspector, and hold both offices at the same time, and receive the emoluments thereof, under the act of 7th of May, 1822 (chapter 107, § 14). Secondly. Whether the limitation contained in the 15th section of the same act of the compensation of the deputy collector to $1,000, applies to the case where he also holds the separate office of inspector; and performs all the duties of both offices.

As to the first question, it appears to me to be too clear for argument. There is nothing in the nature or duties of the offices of deputy collector and inspector of the customs, which make them incompatible with each other. The 14th section of the act of 1822 (chapter 107) declares "that in the ports of Boston, New York, Philadelphia, Baltimore, Charleston, Savannah, and New Orleans, no person shall be an inspector, who at the same time holds any other office in the collection of the customs, in either of the said ports." Now the very enumeration here includes only certain specified ports, and, of course, excludes all other ports, upon the known maxim, "Expressio unius est exclusio alterius." The policy of the section doubtless was, that, in the enumerated ports, the duties of deputy collector would or might occupy all the time of that officer, and that it would be a public inconvenience, and perhaps lead to the gross abuse of creating sinecures, to allow him to hold another office at the same time, the duties whereof he could not adequately perform, or might injuriously to the public service neglect.

As to the second question, the fifteenth section of the act of 1822 (chapter 107) provides, "that the secretary of the treasury may from time to time limit and fix the number and compensation of the clerks to be employed by any collector, naval officer, or surveyor, and may limit and fix the compensation of any deputy, of such collector, naval officer or surveyor; provided, that no such deputy in any of the districts of Boston and Charlestown, New York, Philadelphia, Baltimore, Charleston, Savannah, or New Orleans, shall receive more than one thousand five hundred dollars, nor any such other deputy more than one thousand dollars, for any services he may perform for the United States in any office or capacity." It is upon the last clause only, that the whole controversy hinges. It is certainly obscurely drawn; and the question is, what is the proper interpretation to be given to the words, "in any office or capacity." After weighing the subject with a good deal of care, I have come to the conclusion, that the true intent and meaning of the clause is to limit the emoluments of the deputy collector in that office to the sum specified, and to make no allowance to him on account of any incidental services he may perform, or emoluments he may receive beyond that sum; and that it was not intended to say, that if he actually performed the duties or services of any other independent office, such as inspector, in any of the nonenumerated ports, he was not entitled to receive the emoluments thereof. In short, I read the language, as if it were, "in any such office or capacity." The 18th section of the same act contains a provision, having a similar policy and operation, as to the incidental services and compensation, which might be claimed, virtute officio, by a collector, naval officer, or surveyor.

The office of inspector is an entirely distinct and independent office from that of deputy collector, having different duties, and requiring different services. Indeed, deputy collectors were not expressly authorized by law to be employed in the customs until the act of 3d of March, 1817, c. 282, § 7 [6 Bior. & D. Laws, 243; 3 Stat. 397], made perpetual by the act of 6th of May, 1822, c. 56, § 4 [7 Bior. & D. Laws, 55; 3 Stat. 681]. "In any office or capacity," may well be interpreted to mean "in any one office or capacity." If it were necessary to look back upon the pending terms of the 15th section of the act of 1822 (chapter 107), to seek for another as the true use of the language, it would be by no means a forced construction to suppose, that as the compensation of clerks of the collectors, as well as deputies, was to be fixed, that the object was to prevent a deputy collector from receiving at the same time compensation as clerk, the duties of the latter belonging as an appropriate incident in many cases, if not in all, to that of deputy. In this view, also, the interpretation of the section would steer wide of the objection raised by the United States, for the duties of inspector are not incident to the duties of deputy collector, as those of a clerk are and may be.

It appears to me, also, that, it ought not to be presumed, that the government, when it fixes the compensation of a deputy collector, means that he shall be compellable to perform the duties of inspector gratuitously; nor can it be presumed, that the government, when it fixes the compensation of a deputy collector, looks to any other thing than a re-

muneration of the duties, which he is to be called upon to perform as such. I know of no authority given by law to the secretary of the treasury to compel, or to require, any officer appointed to one office to perform the duties of another independent office, either as a condition of his appointment, or otherwise. The law, as I conceive, adjusts, or intends to adjust, the measure of the compensation of every officer to the duties to be performed in that office, and not in another independent office. It does not seem to me, therefore, that the court, except upon the most clear and positive language of a statute, ought to adopt any such conclusion; and where the words are loose or obscure, and admit of two interpretations, it seems to me, that the construction ought to be favorable to the claims of the officer, who performs the duties of two independent offices. It has always appeared to me, looking historically to the legislation upon the subject of compensation of officers of the customs, that the great object of the legislature was, not to cut down the reasonable emoluments of officers holding different offices, but to prohibit their union, when incompatible with public policy, or to prevent and suppress the growing evil of extra compensation claimed for services purely incidental to a single office.

Upon the whole, my opinion is, that the judgment ought to be rendered, upon the state of facts, for the defendant, for his full compensation as inspector, independent of his claim as deputy collector.