THE PEOPLE *ex rel.* CHURCH v. HOPKINS, Comptroller, etc.

*Official salary — deputy performing duties of principal.*

The relator was deputy superintendent of the State insurance department By the statute (Laws 1859, ch. 366) the deputy is to "possess the powers and perform the duties attached by law to the office of principal, during a vacancy in such office and during the absence or inability of his principal." On the 13th of May the superintendent resigned his office, creating a vacancy, which continued until November 20th, during all which time relator performed the duties of superintendent.

*Held*, MILLER, P. J., *contra*, that during the vacancy relator remained deputy, and that he was not during such time entitled to the salary of superintendent.

CASE submitted under section 372 of the Code. The facts appear in the opinion.

*H. E. Sickels*, for relator.

*F. C. Barlow*, attorney-general, for defendant.

PARKER, J. This is a case submitted under section 372 of the Code.

On the 13th day of May, 1872, George W. Miller, superintendent of the insurance department of the State of New York, resigned his office, the relator having been previously appointed, and being then the deputy of said superintendent. The vacancy, occasioned by the resignation of Miller, was not filled by the appointment and

qualifying of a successor, until November 20, 1872, when such successor entered upon the duties of his office. From the time of the resignation of Miller, until his successor entered upon the duties of his office, the relator acted as, and performed all the duties of, superintendent of the insurance department, in accordance with the provisions of the statute in such case made and provided. He claims to be entitled to the salary of superintendent during the time in which he performed the duties of such office, and called upon the comptroller to draw his warrant therefor. This, the comptroller refused to do, denying the validity of his claim to such salary; and the question is submitted to the court whether or not he is entitled to such salary.

By provision of the act establishing the insurance department (Laws of 1859, ch. 366, § 2), "the chief officer of said department shall be denominated the superintendent of the insurance department. He shall be appointed by the governor, by and with the advice of the senate, and shall hold the office for the term of three years. He shall employ, from time to time, the necessary clerks. * * * He shall appoint one of the said clerks *to be his deputy, who shall possess the powers, and perform the duties attached by law to the office of principal, during a vacancy in such office, and during the absence or inability of his principal.* Within fifteen days from the time of notice of their appointment, respectively, the superintendent and his deputy shall take and subscribe the oath of office prescribed by the constitution, and file the same in the office of the secretary of State; and the said officers shall be, in all respects, subject to the provisions of the sixth title of chapter five of the Revised Statutes, so far as the same may be applicable." One of said provisions is, "every office shall *become vacant* on the happening of either of the following events, before the expiration of the term of such office: 1. The death of the incumbent. 2. His resignation." 1 R. S. 1st ed., 122, § 34.

On the resignation of Miller, the office of superintendent became vacant, notwithstanding the existence of the deputy, and the powers conferred upon him to perform all the duties of principal — and that vacancy continued until a successor was appointed and qualified. The deputy did not, therefore, become superintendent of the insurance department, upon the resignation of his principal, although he thereupon became vested with the powers of the principal, and obligated to perform the duties attached by law to the

office of principal, until a principal should be appointed. It does not follow, because the deputy is invested with the powers, and charged with the performance of the duties of superintendent, that he becomes superintendent. His office is still that of deputy. The powers and duties of the deputy are enlarged — the office is the same as before. The deputy, upon whom new powers are thus conferred and new obligations imposed, is still deputy, and entitled only to the salary which the law has fixed for the deputy.

This result seems to me logical and conclusive, for I cannot concur in the opinion that the right to the superintendent's salary lurks in the word "powers" contained in the act. When it is said he shall appoint a deputy, "who shall possess *the powers* of principal during a vacancy," etc., it cannot, by any authorized construction, include the right to the principal's salary. It is the official powers, powers to be exercised in the performance of official acts, that are intended. The right to compensation, fixed by law, is not one of the powers conferred upon a public officer. That is a mere personal right. His powers are given to be used for the public. His right to compensation is to be claimed and enforced, for his individual benefit. It would be a very unusual and incorrect use of language to say that one of the powers of the superintendent is to claim and receive $7,000 per year for his services. That is a right not a power, the two are not synonymous.

Again, we see that, not only during a vacancy in office, but upon every temporary *absence* or *inability* of the principal, the deputy is invested with the same powers, and charged with the same duties. If during a vacancy he is entitled to the salary of the superintendent, he is equally so during such temporary absences and inabilities of the principal. The act makes no distinction in favor of a vacancy, but the three occasions are coupled together, "who shall possess the powers, etc., *during* a vacancy in such office, and *during the absence* or *inability* of his principal," is the language of the act. It is not pretended, as it obviously cannot properly be, that the deputy, although invested with the powers and charged with the duties of the principal, during his absence or inability, has a right to his salary accruing during such absence or inability, and yet, the statute gives it to him equally upon these latter occasions, as during a vacancy.

Unless he can be made actually superintendent during a vacancy, it seems to me quite impossible to hold that he is, during such time,

entitled to the salary of the superintendent, and this we have already seen is impossible. He is still the deputy with the powers and duties fixed by law, as belonging to his office, as such, in the contingencies mentioned. His salary for the performance of all such duties is fixed by law, and to that salary only is he entitled for their performance.

If he were, as in the cases cited by the counsel from opinions of the attorney-generals of the United States, from 3 Story's Reports, and 1 Court of Claims Reports, acting in the office by special appointment, the case would be quite different. In such case he would be superintendent of the insurance department *ad interim*, as Dickins, in the case of *Dickins* v. *United States*, 1 Court of Claims Rep. No. 9, was secretary of the treasury *ad interim*, and the court held him entitled to the salary of the secretary of the treasury, because he was, in addition to being chief clerk in that department, independently of such office, also secretary of the treasury, by appointment of the president. It was not by virtue of his being chief clerk, that he became, upon the occasion of his principal's sickness, secretary *ad interim*. Any other person might have been appointed by the president to that position. There was no legal objection to his holding two offices, and he did, upon his appointment, hold both the office of chief clerk, and secretary. Says Judge BLACKFORD : " He held two offices at those times, and there was no law to prohibit him from doing so. He discharged the duties of both offices, and must be entitled to compensation accordingly."

The same distinction exists between the cases cited from the other authorities above referred to, and the case at bar. There the claimants performed the duties for which they demanded compensation, not as duties imposed upon the incumbents of the offices which they already held, as such, but by virtue of new appointments making them incumbents of other offices, independent of those already held by them.

Here the relator performed the duties of superintendent, not by virtue of a new appointment to that office, but because they became duties of his office of deputy, pursuant to the statute creating such office, and under which he held it.

The relator's counsel invokes the application, to his case, of the rule of law that " services rendered by one person for another, at his request, create a just claim for compensation, and the law implies a contract to pay," and argues that from this rule " it follows

as a logical conclusion that he (the relator) who, authorized by law, does the work of an office, not simply as a subordinate, but as the chief; not merely as the hand that executes but as the head that plans, is entitled to that compensation which the legislature has said the services are worth," meaning, I suppose, the salary provided by law for the head of the department.

In this conclusion, has not the learned counsel overlooked the fact that the relator undertook to do the work thus referred to, in the event which happened, of the resignation of his principal, when he took upon himself the office of deputy, as a duty belonging to that office, in that event; and to do it for the compensation fixed as the salary of that office? It seems to me that he was acting under a special contract, which fixed his compensation, and that he cannot claim either the salary of the superintendent, specifically, or resort to a *quantum meruit* as the measure of his compensation and claim the value of his services to be what the legislature fixed as the salary of the superintendent. The contract being thus special, there is no room for the operation of the implied contract referred to.

Even if the duty to do the work of the superintendent had been cast upon the relator by the legislature, after he entered upon his office, still he would be confined to his salary for his compensation. Says Judge Bronson, in *The People* v. *Supervisors of New York*, 1 Hill, 362, 367: "It is impossible for a salary officer to make title to an increased compensation on the sole ground that a new duty has been cast upon him by the legislature. There are few State officers, whether executive or judicial, who have not often been charged with new duties, and yet no one has, I presume, ever thought that this gave him a legal title to increased compensation. Whether the pay shall be increased with the burden is a question which addresses itself to the legislature. The courts have nothing to do with it."

I am unable, in any view which I can take of this case, to see any legal ground upon which the relator can claim the salary of the superintendent, and must therefore conclude that it was not the duty of the comptroller to issue his warrant to the relator therefor.

Judgment must be entered for the defendant denying the right of the relator to the salary allowed by law to the said superintendent, and denying his application for a *mandamus*, with costs.

P. POTTER, J. I have struggled hard to find ground to dissent from this opinion, as common justice seemed to demand extra pay for

the performance of extra duties, but cannot find authority to sustain such dissent. I think the acceptance of the office of deputy, with the presumed knowledge that a contingency might call for the performance of extra duties, was a condition of the contract.

The relator took the office upon the implied agreement to perform the duties demanded, contingent as well as certain. If he has a claim beyond that, it is not fixed by statute; it is not fixed by the contract; though it may be just, it is unliquidated · in amount, and I do not see how we are authorized to order a *mandamus* to pay a sum certain.

MILLER, P. J. (dissenting). The relator having performed the duties of the office of superintendent of the Insurance Department of this State, has a strong equitable claim at least to the compensation which that officer is entitled to receive according to law. It is true that this additional responsibility was assumed by reason of a vacancy in the office of superintendent by operation of law, but under · ordinary circumstances it is not to be assumed that it was contemplated by the legislature that increased burdens and responsibilities should be imposed and performed without any corresponding increase of compensation.

Public officers in this State are held to be mere agencies, and the right to compensation arises from the rendition of the services, and is deemed an equivalent for them. *Conner* v. *The Mayor*, 5 N. Y. (1 Seld.) 285, 295, 296; *Smith* v. *The Mayor*, 37 id. 518.

Having in view this salutary principle, it follows as an irresistible conclusion that the relator, having performed the services of the chief officer of the insurance department, should be entitled to receive the same compensation as the superintendent who was appointed to that office originally did receive.

The right of the relator, however, to the increased salary depends somewhat upon the construction to be placed upon the law under which he acted in the discharge of the duties of the office of superintendent. The statute in question (Laws of 1859, ch. 366, § 2, as amended in Laws of 1861, ch. 326, § 1), provides, among other things, that the chief officer of the department, the superintendent, "shall employ, from time to time, the necessary clerks to discharge such duty as he shall assign them," etc., and "he shall appoint one of the said clerks to be his deputy, who shall possess the powers and perform the duties attached by law to the office of

principal during a vacancy in such office, and during the absence or inability of his principal." In the interpretation of this statute we should have in view the intent of the framers and the purpose it was designed to accomplish, without regard to technicalities or strict rules which are peculiarly applicable to a certain class of cases. The intention should be followed when it can be discovered with reason and discretion, although contrary to the letter. Sedg. on Stat. 298; *People* v. *Utica Ins. Co.*, 15 Johns. 358, 380, 381; *Jackson* v. *Collins*, 3 Cow. 89, 96; Potter's Dwarris, 180.

In a case like this the interpretation should not only be reasonable, but liberal, after considering the cause and necessity of the statute as well as the circumstances which it was intended to provide for. Looking at the statute cited in this aspect, it is difficult to discover any sufficient reason why an officer selected by law to fill a vacancy should not receive the same compensation as his predecessor, whose place he occupies. It is hardly to be supposed that the legislature intended to deprive the successor to the vacant office of the same remuneration which had been fixed for the same services, and to pay which an ample appropriation had been made annually.

Upon a vacancy being created by the resignation of the superintendent, the relator became vested with all the powers and authority of that office to the same extent as if he had been appointed to fill that office. According to the obvious and unambiguous meaning of the statute, he was obligated to perform the duties of the office as principal, and not as deputy. If he had acted for the principal in case of an occasional absence or disability from sickness, his acts would have been the acts of the principal and not of the deputy. But when the office became vacant by the resignation of the superintendent he did not exercise and perform his functions as a deputy, but as the principal and head of the Insurance Department. He was in fact the superintendent, vested with all the powers of that officer and entitled to all its privileges, among which were the emoluments and perquisites arising from the latter position. His "powers" as deputy were not simply enlarged in a technical sense, but he became, by operation of law, promoted to the higher position. He was the principal, and not the agent as he was when merely a deputy.

The practical working of the system by which the lesser office becomes merged in the greater is familiar in the history of our institutions. By the constitution of the United States (art. 2, § 1, subd. 6) it is provided that "in case of the removal of the president from

office, or his death or resignation or inability to discharge the powers and duties of the said office, the same shall devolve on the vice-president." This provision is similar in legal effect to the enactment now to be construed, and has been repeatedly applied upon the death of the president. Under it the powers and duties of the office of president have devolved upon the vice-president, and no one has entertained a doubt as to his right to exercise the office, to assume its title and enjoy its powers and emoluments the same as the president. His position as president has received universal recognition, and it has never been claimed that he acted as servant or agent of the deceased president, or in any other or inferior capacity whatever. It has been a conceded fact that he held the office of president directly in accordance with the constitution and by virtue of express authority.

Under the constitution of this State (art. 4, § 6), in case of impeachment, removal, death, etc., of the governor, the powers and duties of the office devolve upon the lieutenant-governor, and it cannot, I think, be claimed that under such circumstances the lieutenant-governor was not possessed of all the powers and functions of the governor, and the right to receive the salary of that officer.

The same rule, it is apparent, applies to a deputy superintendent in case of a vacancy. He does not act as agent of the defunct officer, but has no superior and holds his office by virtue of express provision of law. He is directly an officer of the State, and not the deputy of the officer by whom he was originally designated as deputy.

One of the rights which he enjoys by virtue of the office which is thus conferred upon him is the authority to draw his salary as superintendent. This is derived from the general powers conferred upon him by law, and is one of the incidents to the office itself. I am inclined to think that it is one of the powers conferred by the statute, and that the attempted distinction sought to be made between the *right* to receive and enjoy and the *power* to draw the salary has no foundation, and is without any real difference.

If the relator was actually superintendent, and possessed all the powers of that officer, then he was manifestly authorized to employ such powers to receive and collect his salary.

In *Merriam, Ex'r*, v. *Clinch*, 6 Blatchf. 5-9, a question arose as to the construction of section 2 of the act of March 2, 1799 (U. S. Stat. at Large, 644), which provided " that in case of the disability or death of a collector, the duties and authorities vested in him

shall devolve on the deputy," etc., and BLATCHFORD, J., held that the word "authorities" was broad enough to include the emoluments of the office, and that this word includes not only such powers as are necessary to enable him (the deputy) to discharge his duties properly, but the right and power to demand and receive the emoluments. This word has no more force or significance than the word "powers" in the act now in question, and may be considered as equally comprehensive and controlling.

The right to receive extra compensation where additional duties have been performed, and there was no legal prohibition, has been repeatedly recognized in the general government, and is sanctioned by the opinions of several attorneys-general of the United States, in numerous cases, as well as by adjudications of the court.

In *Dickins* v. *United States*, 1 Court of Claims, No. 9, it was held, that a subordinate officer, performing temporarily the duties of another office of a higher grade, was entitled to receive compensation accordingly. It is true, that Dickins held the office of secretary of the treasury *ad interim*, by appointment of the president, as well as the office of chief clerk, but this does not alter the principle upon which the right to compensation is founded, which was stated by the learned judge to be, that "he discharged the duties of both offices, and must be entitled to compensation accordingly."

The relator's right was equally strong, as he was vested with the powers and obligated to perform the duties of the office of superintendent, by operation of law, under an express provision of a statute which was quite as effectual and conferred as great authority as if he had been appointed. If any difference exists between the case cited and the one at bar, it is in favor of the relator, as he only demands compensation for one office, and not for the performance of the duties of both.

The same principle is upheld in the *United States* v. *Morse*, 3 Story, 87; see, also, opinions of attorneys-general, vol. 2, p. 189; vol. 4, 122–145.

The practice and precedent appear to have been in one and the same direction, from the higher officers of the government down to those occupying subordinate positions, that where an officer of an inferior grade, in a case of vacancy, performs the duties and possesses the powers of his superior, that he shall be entitled to the same salary or emoluments as the latter.

This principle of compensation is just and equitable, and I think

should be allowed to prevail, unless there is some legal difficulty in the way.

It appertains to all private contracts for services rendered, that the person performing the service is entitled to a remunerative compensation, and there is no good reason why the State should be exonerated, in its dealings with its officers, from the application of the same just and salutary rule. Certainly the law should not be strained, and strict technical rules invoked, and applied to defeat a claim of such a character.

In opposition to the construction of the law claimed by the relator, an argument is urged, to the effect that if the relator was entitled to the salary of the superintendent, during a vacancy in the office, that he would for the same reason be entitled to the same remuneration, during any temporary absence or inability of his principal to serve. I think that this position, though specious, is not sound, and it is perhaps sufficient to say, that this question does not now arise, and, therefore, does not require discussion. It may, however, be remarked, that it is apparent that the question in such a case depends entirely upon a different principle, and it is a full, complete and conclusive answer to the point urged, that in the case put, the deputy would act as the *agent* of the *principal*, while here, he is the *principal himself*.

There may be very satisfactory reasons for not paying the deputy the salary of the principal, while the latter holds the office and is entitled to the salary, although there is none whatever for refusing to pay when the deputy has superseded the principal, taken his place, performed all his duties, and is invested by law with all his powers and authority. It cannot, therefore, be claimed, that the statute gives to the deputy the same right to the salary, in case of absence or inability, as it does when there is a vacancy, and the superintendent has no claim for the salary.

When the relator assumed to act as deputy he did not, I think, thereby obligate himself to perform the duties of superintendent, in case of a vacancy, for the same compensation, and he was not bound by any special contract, express or implied, to that effect. The effect of his position was, in case he became superintendent by reason of a vacancy, to entitle him to all the rights, privileges and emoluments of that office. This was in fact his contract, and nothing less than this, and he by no means occupies the position of a public officer claiming an increased compensation upon the ground that a

new duty has been cast upon him by the legislature. See *People* v. *Supervisors of New York*, 1 Hill, 362, 367.

In the case last cited a salaried officer sought to enforce compensation, *extra* his salary, for performing an additional service not originally required of him, and it was held that the legislature had declared that the salary was to be deemed a compensation for this as well as all other services. The case cited and the one before us are not at all analogous, for in the former there had been no transfer from one office to another, while here the officer had been placed in another and a different position. This is not, therefore, a case where an additional duty is imposed, but one where the deputy becomes the principal officer.

The learned counsel for the defendant suggests that if an act had been passed restoring to the comptroller all the powers of the Insurance Department, which were previously invested in him, and containing a provision to that effect, it would not enable the comptroller to draw the salary of the superintendent, either alone or in addition to his own salary, and he claims that this is a parallel case.

I think the counsel is clearly mistaken in this respect, and that there is no similarity in the two cases.

An act of the character described would virtually and absolutely abolish the office of superintendent, and hence such a provision would neither add to nor impair its effect. Besides, the lesser office would become merged in the greater, while here the greater office to which the relator was transferred supersedes the lesser.

The position that a mandamus will not lie because no money has been appropriated to pay the relator cannot, I think, be maintained. An appropriation was made for the payment of the salary of the superintendent, whose office the relator fills, and it was the duty of the comptroller to pay the same from this fund.

The relator is entitled to the judgment demanded, and a peremptory mandamus should issue directing the comptroller to issue his warrant for the amount of the relator's claim, with costs.